UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


THOMAS DISANTO
KARRIE DISANTO

    VS.                                    CA NO.: CA12-318

JP MORGAN BANK, N.A., ALIAS,
DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR LONG BEACH
MORTGAGE LOAN TRUST 2006-1, ALIAS AND
JOHN DOE, ALIAS

## MEMORANDUM OF LAW IN RESPONSE TO MOTION TO DISMISS

### INTRODUCTION

Plaintiffs, Thomas Disanto and Karrie Disanto, are residents of the State of

Rhode Island with an address of 25 Winthrop Road.  Plaintiffs own said real estate

located at 25 Winthrop Road, East Greenwich.  Plaintiffs executed a mortgage and

promissory note to Long Beach Mortgage Company on December 16, 2005.

Subsequently, they allege in their complaint, that on or before February 7, 2006,

Long Beach sold their mortgage and note to a company called Long Beach

Securities.  From origination of their loan until 2008, their loan servicer was

Washington Mutual Bank. ("WAMU")  This bank was placed into receivership by

the Office of Thrift Supervision on September 25, 2008. The receiver was the

Federal Deposit Insurance Corporation ("FDIC"), which on September 25, 2008

1

sold certain assets of WAMU to Chase. Thus as of September 25, 2008, Washington Mutual Bank no longer existed. Chase claims to have entered into a purchase and sales agreement with the FDIC to buy certain assets of WAMU. One of those assets was the servicing rights of WAMU.  As a result after September 25, 2008,  the servicer of Plaintiffs' loan was a Chase affiliate, named Chase Home Finance, LLC.  This entity, also no longer exists, as it has been merged into Chase on May 1, 2011.

In 2008, the Plaintiffs encountered financial difficulty and were behind in their mortgage payments.  At the time that WAMU went out of business on September 25, 2008 and the servicing of their mortgage was allegedly transferred to Chase Home Finance, they were delinquent in their mortgage payments.  Chase Home Finance claims to have taken over the loan servicing of their loan while they were, from the point of view of the loan servicer, in default.  There however is a difference between being delinquent and being declared in default pursuant to the terms of the mortgage.  The terms delinquent and default may be synonymous in the sense of being more than 30 days behind in paying the mortgage,  However to be declared in default pursuant to the terms of the Plaintiffs' mortgage, certain notices were required pursuant to paragraph 22 of their mortgage.

Plaintiffs' financial situation deteriorated and they each filed bankruptcies

with resulting stays.    Finally after several attempts to foreclose, Chase hired

attorneys to seek to foreclose on Plaintiffs, with a scheduled sale date of May 1,

2012. Plaintiffs on April 30, 2012 filed this complaint, which pursuant to the Order

of this Court, stayed the foreclosure and referred the case to the Special Master for

mediation. Subsequently an amended complaint was filed on December 9, 2013.

Defendants filed a motion to dismiss on December 23, 2013.

### FACTUAL ALLEGATIONS OF PLAINTIFFS' COMPLAINT

The Plaintiffs have made certain specific factual allegations, which make

their claims plausible,  as set forth in their complaint which for purposes of the

Motion to dismiss are deemed to be true.  They first alleged that the purported

assignment of mortgage from Washington Mutual Bank as successor to interest to

Long Beach Mortgage Company to Deutsche Bank National Trust Company as

Trustee for Long Beach Mortgage Loan Trust 2006-1 ("2006-1"), dated March 25,

2008  was void for several reasons.  They buttressed this allegation with the fact

that on that date, WAMU had nothing to assign as their loan had been sold by

Long Beach to Long Beach Securities and was intended to be conveyed to 2006-1.

However, since as alleged by the Plaintiffs, the mortgage had already been sold to

Long Beach Securities before February 7, 2006.  Thus, on the date of the alleged

assignment, WAMU, even if it were the successor in interest to Long Beach , a

contention disputed by the Plaintiffs,  owned nothing to convey. This allegation

was made in the original complaint as well as the amended complaint. To buttress this allegation, the Plaintiffs referenced the Pooling and Servicing Agreement ("PSA") of the 2006-1 trust, which provided   evidence that no mortgages in the trust were conveyed to it by any entity other than Long Beach Securities, which was the Depositor of the Trust.  The primary governing document of the trust, which was the Pooling and Servicing Agreement, defined the transactional structure of the trust.  It acts as a sort of road map of the trust, and is the only real evidence of the manner in which loans were conveyed into the trust.  Plaintiffs alleged that the PSA defined that the only loans transferred into the trust were there by Long Beach Securities, within 90 days of the closing date of the trust, which was February 7, 2006.  These very specific allegations of the Plaintiffs are not made to enforce the PSA. Rather the allegations, which detail the transactional structure of the securitization, are used to rebut the conflicting allegations of the Defendants, who in their Motion to Dismiss, assert that the Trust received the mortgage and note on March 25, 2008.  These types of conflicting allegations cannot be resolved by a Motion to Dismiss, but are matters resolved by the finder of fact at trial.

The second allegation of the Plaintiffs' complaint and amended complaint relating to the alleged assignment is their contention that the person whose name is

4

affixed to the alleged assignment, Christina Allen, was an employee of Fidelity National Foreclosure Solutions, Inc. ("Fidelity"), which is now known as LPS Default Services, Inc. ("LPS"), an affiliate of Lender Processing Services, Inc., who was not employed by Washington Mutual. The Plaintiffs have alleged that she was never authorized to sign any document on behalf of WAMU. The Plaintiffs alleged in both the original complaint and the amended complaint this lack of authority on her part. Thus there is a plausible fact allegation that the assignment was void. Plaintiffs have also alleged that Christina Allen did not sign the alleged assignment. They have alleged that her name was affixed to the document by another person and that the name of the notary public was also signed by another person. They are prepared to provide the Court with examples of the various signatures of Christina Allen to additionally support this allegation

## THE PLAINTIFFS HAVE MET THE PLEADING REQUIREMENTS OF ASHCROFT V. IQBAL

The First Circuit has recently interpreted the holding of the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) for analysis of FRCP 12(b)(6) motions. The Supreme Court in <u>Iqbal</u> had stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, <u>127 S.Ct. 1955</u>. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

The First Circuit in *Rodriguez-Vives v. Puerto Rico Firefighters* (1st Cir., January 8, 2014) recently held:

> We emphasize that this case is on appeal of a **12(b)(6)** motion, not a motion for summary judgment. *HN12*⚓"Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (**1st Cir.** 2013).

The First Circuit thus confirmed that even if a Plaintiff makes a specific factual allegation, that merely lacks some surrounding context, the claim will be sufficient to survive a motion to dismiss.

Thus for purposes of the Motion, all factual allegations in Plaintiffs' complaint must be accepted by the Court as true. The Court also reiterated the principle that the First Circuit had previously stated in similar principles in Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (**1st Cir.** 2013):

> The prima facie case is an evidentiary model, not a pleading standard. For this reason, the interaction between the prima facie case and the plausibility standard crafted by the **[**2]** Supreme Court in Bell Atlantic Corp. v. Twombly, created some confusion. We now resolve that confusion and hold that *HN1*⚓the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold. Accordingly, that aspect of the district court's decision must be annulled and the case remanded for further proceedings.

Plaintiffs have made factual assertions of plausible facts which are deemed to be true for purposes of the Motion to dismiss.

## NEITHER WASHINGTON MUTUAL NOR THE FDIC EVER OWNED THE PLAINTIFFS' MORTGAGE AND THE FIRREA DOES NOT APPLY TO THIS CASE

The Defendants cite The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), as a basis for this Court lacking jurisdiction over any aspect of this case.  They cite the case of _Demello v. US Bank National Association_ 727 F. 3rd 117 (1st Cir., 2013) in support of their defense. However _Demello_ has no applicability because, unlike in _Demello_, WAMU did not own their mortgage at the time of the FDIC receivership.  In _Demello_, Judge Selya noted:

> In November of 2008, the Office of Thrift Supervision closed Downey Savings and appointed the Federal Deposit Insurance Corporation (FDIC) as its receiver. _See_ 12 U.S.C. § 1821(c)(3)(A); 75 Fed.Reg. 45114-01, 2010 WL 2990405 (Aug. 2, 2010). The FDIC entered into both a purchase and assumption agreement and a loan sale agreement with the defendant, U.S. Bank. By virtue of these agreements, U.S. Bank assumed all of Downey Savings' loans and mortgages.

However in this case, the Plaintiffs specifically allege facts, buttressed by the evidence provided by the Pooling and Servicing Agreement and other securitization documents,  that their mortgage had been sold by Long Beach to Long Beach Securities before February 7, 2006 and as a result the mortgage was not owned by the failed WAMU on September 25, 2008 or at any time.  In

*Demelo*, the Court applied the FRREA, because the claim of that Plaintiff was against US Bank for the conduct of Downey, which owned the mortgage, prior to its failure and takeover by the FDIC.

<u>Demelo</u> and this case these cases are totally apposite. Here the Plaintiffs specifically allege in paragraph 3 of the amended complaint: "When the FDIC sold WAMU's banking operations to Chase it did not sell Plaintiffs' note or mortgage  as it never owned the note or mortgage ". In paragraph 4, they alleged that the FDIC "never owned Plaintiffs' note or mortgage".  They made these allegations because the PSA and supporting documents referenced in the complaint made it clear that no loans in the Trust were sold to it by WAMU or Long Beach. <u>Demello</u> has no applicability to a case in which WAMU never owned the note or the mortgage.  Such inquiry is a fact consideration not resolved by a Motion to Dismiss.

## <u>THE PLAINTIFS HAVE STANDING TO CHALLENGE THE PURPORTED ASSIGNMENT WHICH DID NOT TRANSFER THE MORTGAGE TO THE DEFENDANT TRUST</u>

The Rhode Island Supreme Court recently held in the case of *Mruk v MERS* (December 19, 2013), that a homeowner possessed standing to challenge an assignment that was void, defective or invalid. The Court stated:

> We emphasize that, unlike the usual third parties to contracts, the homeowners here are not attempting to assert the rights of one of the contracting parties; instead, the homeowners are asserting their own rights

not to have their homes unlawfully foreclosed upon. Mortgagors in Rhode Island, no less than in Massachusetts, are in the unusual position of facing a possible eviction from their homes at the hands of an entity with which they lack privity. Absent standing to challenge the assignment by which the purported authority to foreclose has been derived, homeowners would be without legal recourse to contest this injury. We do not choose to close the courthouse doors entirely to such homeowners. Accordingly, we hold that homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose. . . In so holding, we emphasize that this exception to the general rule precluding third-party standing to challenge a contract is narrow and confined to the circumstances of a mortgagor challenging an "invalid, ineffective, or void" assignment of the mortgage.

*Mruk* at p13.

The Court went on to define specifically what it meant by void. It reviewed the allegations of the Plaintiff in the complaint:

With these limitations in mind, we turn to Mruk's allegations challenging FNMA's status as a lawful mortgagee. Mruk asserts that MERS never transferred legal title, that **Harmon's purported signature on the assignment is false, and that Harmon did not have the authority to execute a valid assignment** even if his signature was genuine.

The Court then stated as to these allegations:

**If correct, any assignment of the mortgage and subsequent foreclosure would be invalid, ineffective, or void. Accordingly, Mruk has standing to pursue his claims.** *Mruk* at p. 13 (emphasis added)

Thus the Supreme Court specifically defined a void assignment as one in which the assignor lacked anything to assign, in which the signature was false and in which the alleged signor lacked the authority to sign the document, assuming that the signature was accurate. This is the established case law in Rhode Island as

9

established by the Rhode Island Supreme Court in *Mruk*. Any suggestion by the

Defendants that there is any mistake or misunderstanding by the Supreme Court in

*Mruk* is belied by the analysis of the facts by the Supreme Court, which looked at

the evidence presented by the Plaintiff as insufficient to rebut the affidavit of the

defendant in *Mruk* that the signature of Andrew Harmon, whose law firm

foreclosed in the case, was genuine. It specifically indicated that Summary

Judgment was appropriate because there had been an insufficient opposition to

establish the lack of genuineness of the Harmon signature:

> We note that the affidavits questioning the authenticity of the signature were
> made by an attorney and a title insurer, neither of whom claimed any
> particular expertise in handwriting or in forgeries. Bare assertions made by
> nonexpert affiants in a field that is not generally understood by the lay public
> do not rise to the level of competent evidence which may establish the
> existence of a genuine issue of material fact. Cf. Estate of Giuliano v.
> Giuliano, 949 A.2d 386, 393-94 (R.I. 2008)(holding that the nonmovant had
> established the existence of a genuine issue of material fact with regard to
> the authenticity of a signature where the nonmovant had submitted the
> affidavit of a handwriting expert, which provided information concerning
> the affiant's expertise, summarized the examination technique the expert had
> employed, and gave the expert's professional opinion that the signature was
> not valid).

This analysis by the Rhode Island Supreme Court indicates that it clearly

intended to include in the definition of void assignment, one in which the signature

of the alleged signer was not genuine and that the example stated was not

inconsistent with the void assignment principle enunciated by the Supreme Court.

Rhode Island has a statute, R.I.G.L. 34-11-24 which requires that an assignment be

duly executed:

> **§ 34-11-24  Effect of assignment of mortgage. –** An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, **when duly executed,** have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained. (emphasis added).

Thus this analysis of the Rhode Island foreclosure process by the Rhode

Island Supreme Court was consistent with the Rhode Island statute, which required

assignments to be "duly executed".  The Supreme Court thus held that a forged

assignment or an assignment, which the signer lacked authority to sign would be

void.

The Rhode Island Supreme Court again indicated that homeowners

possessed standing to challenge assignments in *Rutter v. Mortgage Electronic*

*Registration Systems, Inc.* (January 13, 2014):

> We held in Mruk that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes as being void to the extent necessary to contest the foreclosing entity's authority to foreclose."

The Court affirmed the Summary Judgment ruling against the homeowner,

due to the fact that the Plaintiff had not presented sufficient facts to contest the affidavits of the defendants in its Summary Judgment motion.  The Court stated that:

> the affidavit submitted by defendants that outlined the travel of both the mortgage and the note was not challenged by plaintiffs in the counter-affidavits that they submitted.

The Rhode Island Supreme Court in _Chhun v. Mortgage Electronic Registration Systems, Inc._ (February 3, 2013) for the third time, reiterated this principle and eliminated any doubt as to its holding contrary to standing of homeowners to defend themselves against parties seeking to foreclose on their homes, who were not in privity with them.  Plaintiffs had claimed that the alleged signer of the assignment lacked authority to sign the assignment.  The Supreme Court reviewing the facts, stated:

> On September 10, 2010, MERS purported to assign the mortgage to Aurora. The Corporate Assignment of Mortgage (the assignment) is endorsed by MERS, "as nominee for Domestic Bank [its] Successors or Assigns." It is signed by "Theodore Schultz, Vice-President" (Schultz). The complaint, however, alleges that Schultz "had no authority to assign" the mortgage. More specifically, plaintiffs allege that Schultz was "an employee of Aurora, not a Vice-President or Assistant Secretary of MERS." Furthermore, plaintiffs allege that MERS did not order the assignment to Aurora.[3]

The Defendants in _Chhhun_, based on these allegations, filed a motion to dismiss which was granted, based on lack of standing on the part of the homeowners to challenge the assignment. The Supreme Court, citing _Mruk_ reversed:

Recently, this Court held that, in limited circumstances, "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose." Mruk v. Mortgage Electronic Registration Systems, Inc., No. 2012-282-A., slip op. at 13 (R.I., filed Dec. 19, 2013). The plaintiffs in this case contest Aurora's authority to foreclose, alleging that the mortgage was not validly assigned. In light of Mruk, we are satisfied that plaintiffs have standing to prosecute this claim.

The Court reviewed the allegations of the Plaintiffs' complaint which were

deemed to be true and found that the Plaintiffs' allegations were actionable:

Paragraph 12 of the complaint alleges: "On or about September 10, 2010, MERS attempted to assign this Mortgage to Aurora. * * * Theodore Schultz signed. **Theodore Schultz had no authority to assign.**" Thus, **the plaintiffs have alleged that the one person who signed the mortgage assignment did not have the authority to do so.** This allegation is buttressed by other allegations in the complaint. **Paragraph 13 states that "Theodore Schultz was an employee of Aurora, not a Vice-President or Assistant Secretary of MERS." Paragraph 17 alleges that "MERS did not order the assignment to Aurora." Finally, paragraph 19 contends that "[n]o power of attorney from MERS to either Theodore Schultz or Aurora is recorded and referenced in the subject assignment." These allegations, if proven, could establish that the mortgage was not validly assigned, and, therefore, Aurora did not have the authority to foreclose on the property.** Accordingly, the complaint states a plausible claim upon which relief can be granted, and it is not "clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim." Thus, the defendants' Rule 12(b)(6) motion was improperly granted. (emphasis added).

Thus in _Mruk_, _Rutter_ and _Chhun,_ the Rhode Island Supreme Court has

established that in Rhode Island a homeowner can challenge assignments if the

alleged assignor possessed nothing to assign, if the alleged signer of the alleged

13

assignment did not sign the document, if the signer of the alleged assignment

lacked authority to sign the document, if the alleged assignor did not order the

alleged assignment to the assignee or if no power of attorney from the entity

seeking to assign was referenced in the assignment and recorded.  These authorized

challenges emphasize the fact specific nature of these cases, consistent with the

Court's previous decision in *Bucci v. Lehman*, 68A 3d 1064 (R.I., 2013) in which

the Supreme Court had held that the issue of agency was a question of fact. The

Defendants do not acknowledge or accept these holdings of the Rhode Island

Supreme Court, which are binding on a Federal Court, sitting in diversity. Any

suggestion that *Culhane v. Aurora* 708F 3d 282 (1st Cir., 2013) mandates a

different result is inconsistent with the principles of diversity of jurisdiction.  The

Rhode Island Supreme Court has indicated that the challenges of the Plaintiffs in

this case to the assignment would result in the assignment being void, if proven at

trial.  That is the law of Rhode Island regarding real estate law, mortgages and the

foreclosure process. Plaintiffs have standing to make these challenges as a matter

of law.

This Court also indicated in *Cosajay v Mortgage Electronic*

*Registration Systems, Inc.*(D. R.I. November 5,  2013)  that issues relating to void

or voidable would be considered at either the Summary Judgment or trial stage of

the proceedings.  In that case, the Motion to Dismiss was denied with similar

factual allegations which were present in this case. A review of the facts alleged in

Plaintiffs' amended complaint, indicates that the complaint made the exact

allegations which were found to be sufficient in the *Mruk* , *Rutter* and *Chhun*.  It

specifically alleged that:

> 1.    Neither WAMU nor Long Beach owned the note or mortgage on March 25, 2008; Para 19(b).
>
> 2.    2006-1 never purchased Plaintiffs' note or mortgage from Long Beach or WAMU; Para 19(c).
>
> 3.    Long Beach had already sold the Plaintiffs' note and mortgage to Long Beach Mortgage Securities; Para 19(c).
>
> 4.    WAMU and Long Beach on March 25, 2008 and all times after January 24, 2006 never possessed a legally transferable interest in Plaintiffs' mortgage, rendering any attempted assignment void; Para 19(f).
>
> 5.    WAMU and Long Beach had no authority to make an assignment of Plaintiffs' mortgage or note to 2006-1; Para 19(g).
>
> 6.    Christina Allen is not and has never been an employee or validly authorized Officer of WAMU . . . She was never authorized any document on behalf of WAMU; Para 19(h).
>
> 7.    Christina Allen did not sign the alleged assignment of mortgage dated March 25, 2008. Her name was either electronically affixed to the document or signed by other persons as was the name of the alleged notary public; Para 19(h).
>
> 8.    Her name was affixed to this alleged assignment because WAMU knew that Long Beach had sold the note and mortgage to LBSC and there was no one available to clear up the missing assignment; Para 19(h).
>
> 9.    WAMU has never owned the Plaintiffs' Note or Mortgage; Para 19(i).

15

These factual allegations satisfy FRCP 8 and 9 and the Rhode Island

Supreme Court's standard in *Mruk, Rutter* and *Chhun*. This Court denied a Motion

to Dismiss in *Cosajay* before the Rhode Island Supreme Court ruled that Plaintiffs

have standing as a matter of Rhode Island law. Those cases bolster Plaintiffs'

position as a matter of law.

## THE ALLEGED  LOAN MODIFICATION IS OUTSIDE THE PLEADINGS AND IS NOT PROPERLY CONSIDERED IN A MOTION TO DISMISS

The Defendants allege that a matter outside the pleadings and not referenced

in the complaint or amended complaint mandates dismissal. They attach a

purported loan modification agreement to their motion. This document is signed by

the Plaintiffs, but was not executed by the defendant Trust.  Rather it was

purportedly executed by a Washington Mutual Employee on October 7, 2008, at

a time when Washington Mutual Bank no longer existed.  Thus the question of the

authority of an employee for a non-existent company to have a power of attorney

on behalf of the Defendant trust is a question of fact to be resolved by Summary

Judgment or Trial.  The ability of the Defendant trust to enter into a loan

modification is also a question of fact. If it did not own the mortgage, it could not

modify that mortgage, any more than it could enforce that mortgage.

Oddly enough, the Defendant Trust states that it seeks to enforce the

modification agreement only, not the mortgage.  However in the alleged

modification agreement, payment was to be made to Washington Mutual Bank, not the Defendant trust.  It also references the security instrument, which is the only manner in which the mortgage could be enforced as the alleged agreement, (which coincidentally purported to shorten the promissory note duration to 7 years, without amending the note.) lacks independent Statutory Power of Sale.

However the main reason why the alleged modification agreement cannot be the basis for a Motion to Dismiss was stated by the First Circuit in the case of González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 249 (1st Cir. 2012):

> Where the district court considers matters outside the pleadings on a Rule 12(b)(6) motion to dismiss, the district court must "treat[] [the motion] as one for summary judgment under Rule 56" and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Appellants could have complained to the district court, or even to us, that they had, or reasonably hoped to obtain, proof that the appellees were not wholly owned subsidiaries but despite Rule 12(d) were denied such an opportunity.

Thus this matter cannot be considered in a Motion to Dismiss.

Chase has asserted that it was the purchaser of certain assets of Washington Mutual Bank. It is important to note that nowhere in the memorandum or in the record is there any assertion by Chase that it purchased this mortgage or note. Chase knows that WAMU never owned the note or mortgage.  Nothing in the complaint asserts that Chase was anything other than a loan servicer. Thus the

insertion of Chase as purchaser of assets, has nothing to do with this case. They merely state that the assignment, manufactured by LPS and WAMU is void, rendering the Trust unable to enforce the mortgage.

The alleged loan modification agreement, in addition to being outside the pleadings, is not a contract. It was not executed by the Trust, but by a purported employee of a defunct entity, WAMU, which did not exist after September 25, 2008. Pursuant to Rhode Island law, a company which does not exist cannot exercise a Power of attorney. This alleged agreement was not executed by the FDIC as receiver for WAMU with a power of attorney for the Trust. It was not executed by Chase with a power of attorney on behalf of the Trust. The acknowledgment merely states that the person whose name is affixed to the alleged agreement signed in her authorized capacity. However since WAMU no longer existed as an entity, it could not act as a power of attorney for the Trust. This is actual matter outside the pleadings, which is the proper subject of a motion for summary judgment or trial, not a 12(b)(6) motion to dismiss.

Defendant claims that the Plaintiffs are contractually barred from bringing their claims. However these claims arose from attempted foreclosure under the mortgage, with no reference to the modification agreement. None of the notices of sale made any reference to the alleged agreement. Thus another question of material fact is whether the Defendant sought to foreclose on behalf of WAMU,

the Trust or Chase by the terms of the mortgage, the terms of the mortgage as allegedly modified or exclusively pursuant to the terms of the modification.

Plaintiffs dispute to the assertions of the Defendants' interpretation of the Plaintiffs' amended complaint, that the original mortgage or note were unenforceable, void or voidable.  Rather Plaintiffs assert that the trust lacks the capacity to enforce the note and mortgage, because it does not have a valid legal title to the mortgage, which was sold to Long Beach Securities and never was assigned from that entity to the trust.  It is a question of fact as to the capacity of the Trust to even enter into a loan modification as to a loan which it did not own. If it did not own the mortgage or note, then it lacked the capacity to foreclose and also lacked the capacity to enter into a loan modification.  Any document signed by Plaintiffs under duress does not create any rights in the Trust to the mortgage. The document does not state that the Plaintiffs waived any claims against the Trust or its agents, which arose from the creation of the assignment, which they contend renders the mortgage unenforceable. The void nature of the assignment is that which renders the mortgage unenforceable by the Trust, not any conduct of the trust or its agents.

Plaintiffs claim that their rights were violated in 2012 and will be violated in the future by a party, which does not own the mortgage seeks to foreclose.  The

nature of the alleged release is a question of fact, which in any case is not part of

the pleadings and must be addressed by a motion for summary judgment.

## JUDICIAL NOTICE CANNOT BE TAKEN OF DISPUTED DOCUMENTS

Defendants suggest that the Court take judicial notice of the alleged

Purchase and Assumption Agreement between Chase and the FDIC.  However this

agreement is an internet document and is subject to dispute because it does not

contain any loan schedule, and does not indicate that the Plaintiffs' mortgage and

note were part of the sale.

This document is not one that is subject to judicial notice.  FRE 201 titled

Judicial Notice of Adjudicative Facts provides only for Judicial Notice in

certain cases:

> **(b) Kinds of Facts That May Be Judicially Noticed.** The court may
> judicially notice a fact that is not subject to reasonable dispute because
> it:**(1)** is generally known within the trial court's territorial jurisdiction;
> or**(2)** can be accurately and readily determined from sources whose accuracy
> cannot reasonably be questioned.

The so-called FDIC agreement with Chase as it relates to the Plaintiffs'

mortgage is subject to a reasonable dispute due to the fact that there is no loan

schedule indicating that this mortgage was ever owned by WAMU.  In fact Chase

and the Trust know that it was never owned by WAMU and that only the servicing

rights ever belonged to WAMU.  An unexecuted document from an internet site is

not an indisputably accurate source of information as it relates to Plaintiffs'

mortgage. Thus Plaintiffs object to the court taking Judicial Notice of this alleged

agreement.  The Court has not been supplied with any necessary information

regarding this agreement.

### THE STANDARD FOR THE AMOUNT IN CONTROVERSY FOR DIVERSITY JURISDICTION IS THE VALUE OF THE MATTER IN CONTROVERSY-THE VALUE OF THE MORTGAGE AND THE PROPERTY

The United States Supreme Court set forth the standard for determining the

diversity jurisdictional amount in controversy in the case of _Hunt v Washington_

_State Apple Advertising Commission_, 432 U.S. 333; 97 S. Ct. 2434; 53 L. Ed. 2d

383 (1977). In that case the Court held that in determining the amount in

controversy, "in actions seeking declaratory or injunctive relief, it is well

established that the amount in controversy is measured by the value of the object of

the litigation".  _Hunt_ at p. 347.  This analysis applies to this case, where the value

of the object of the litigation is the property of the Plaintiff and the value of the

mortgage which the Plaintiff seeks to restrain and enjoin the Defendant from

enforcing. This seems rather simple and straight forward.  In fact Chase in a

number of cases in this Court and other Courts, has sought removal jurisdiction

and opposed remands using this exact argument.

However Chase suggests that since the Plaintiff has no equity in the

property, there is no amount in controversy. This argument is completely specious,

since it ignores the alleged property rights, which the Defendant seeks to

enforce.  There is a mortgage, which Defendant seeks to enforce, which is worth

more than $75,000.00, as its face value is more than $340,000.00.   The suggestion

by the Defendant that Rhode Island is a title state and that Plaintiff owns nothing to

enforce just is not in conformity with established law and precedent in this circuit

and nationwide.

     The Defendants suggest that the case should be dismissed for lack of

diversity jurisdiction based on the amount in controversy being less than

$75,000.00.  Such a dismissal would be without prejudice to the claims of the

Plaintiffs. However the amount in controversy is not synonymous with the amount

of the damages sought by the Plaintiff. Here the amount in controversy

requirement is satisfied by the matter in controversy value, namely the action by

the Plaintiffs which seeks a declaratory judgment that the Defendant trust is not

entitled to enforce the mortgage. This declaratory judgment would impact the

rights of the defendant, which based upon the face value of the mortgage or the

property is greater than $75,000.  This has been found to apply by the First Circuit

in *McKenna v. Wells Fargo*, 693 F.3d 207 (1st Ci., 2012),   which reviewed a

District Court case in which the Plaintiff sought to enjoin enforcement of a

mortgage of Wells Fargo.  The case was removed to the District Court and  Motion

to Dismiss was granted.  The First Circuit, sua esponte, considered the issue of the

amount in controversy and diversity jurisdiction in such a case:

> As for the $75,000 amount-in-controversy [**8] requirement, "[n]umerous
> [district] courts have held that, where a complaint seeks to invalidate a loan
> secured by a deed of trust, the amount in controversy is the loan
> amount," Ngoc Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022,
> 1028 (N.D. Cal. 2010),[3] although other courts have calculated the amount in
> controversy by reference to alternative criteria, including, inter alia, "the
> unpaid principal balance on the note as of the date of removal," see RC
> Lodge, LLC v. SE Prop. Holdings, LLC, No. 12-0112, 2012 U.S. Dist.
> LEXIS 98199, at *4, 2012 WL 2898815, at *1 (S.D. Ala. July 16, 2012).[4]

Massachusetts is also a title state as is Rhode Island, so it would appear that

this analysis in *McKenna* is applicable in this case. Based on Defendants' position,

a party with no equity in the property would be unable ever to seek relief in the

Federal Court to enjoin a foreclosure.  The action in question seeks to enjoin the

Defendant from foreclosing on property worth more than $75,000 based on a

mortgage worth more than $340,000.00.  Thus the matter in controversy involves

an attempt by the Plaintiffs to deny that the Trust owns a property right worth at

least $340,000.00. Thus the jurisdictional amount has been met by Plaintiffs.

## CHASE IS A DEBT COLLECTOR WITHIN THE MEANING OF 15 USC 1692 ET SEQ AND THE AMENDED COMPLAINT RELATES BACK TO THE FILING OF THE ORIGINAL COMPLAINT

Under § 1692f(6), debt collectors and those enforcing security interests alike

are prohibited from:

[Taking or threatening] to take any non-judicial action to effect dispossession or disablement of property if —

there is no present right to possession of the property claimed as collateral through an enforceable security interest;

there is no present intention to take possession of the property; or

the property is exempt by law from such dispossession or disablement.

Thus pursuant to 15 USC 1692(f) the actions of Chase, if proven, clearly establish violations of the FDCPA.  Chase has moved to dismiss claiming that the debt was not in default at the time Chase obtained the servicing of the mortgage.  It points to15 USC 1692 (F)(3) that it is not included in the definition of debt collector.

**(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

> **(iii) concerns a debt which was not in default at the time it was obtained by such person; or**

Chase notes that it merged with Chase Home Finance, LLC and thus is not a debt collector due to the fact that it the same entity as Chase Home Finance, LLC.  However there is a question of fact as to whether these two entities are separate entities and whether the merger rendered Chase Home Finance the same entity as Chase.  The Defendant makes factual assertions, which must be proven that that Chase became the servicer when Chase Home Finance became the servicer and that the loan was not in default at that time.  This assertion requires

proof of facts and must be the subject of a motion for summary judgment, not a

Motion to Dismiss.  The record is clear that Chase Home Finance claimed to be the

servicer on September 25, 2008, when Washington Mutual went out of

business.  Thus on that date the Plaintiffs' loan was in default, according to Chase,

as stated in this motion. These are factual questions which cannot be resolved by a

motion to dismiss. The United States Bankruptcy Court for the District of

Massachusetts in the case of *In Re Lacey* 480 B.R. 13 (Bankr D. MA, 2012) found

that BAC Home Loans Servicing, L.P. was a debt collector because it admitted its

status as a debt collector to the debtor in its communications with the Debtor.

*Lacey* at p. 52. Similarly the record in this case indicates that  Chase was a debt

collector, as indicated in Exhibit H, a November 25, 2011 letter to the debtor from

Orlans Moran, the law firm  for Chase,  in which its attorney indicated that Chase

Home Finance, LLC is attempting to collect a debt, and any information obtained

will be used for that purpose.   This was sent after the purported merger of Chase

and Chase Home Finance and provides evidence that Chase is a debt collector.


The issue of whether the amended complaint relates back to the original

complaint to toll the statute of limitations depends on whether there were sufficient

facts alleged in the original complaint to put Chase on notice that its conduct

complained of could give rise to a claim for violations of the FDCPA.  Plaintiff

25

alleged in the original complaint the following:

> Thus violations of the FDCPA arose from the same conduct complained of in the original complaint.

> The Defendants scheduled an illegal foreclosure and sent invalid default and sale notices.  These were defective for several reasons:

>> (a)    They were not authorized due to the failure to comply with paragraph twenty two of the mortgage.

>> (b)    They were not authorized because there was no compliance with RIGL 34-27-3.1

>> (c)    The mortgage assignment was void and 2007-1 was not authorized to foreclose

These facts reasonably put Chase on notice that it could be liable for such conduct.  The FDCPA violations alleged in the original complaint rendered it liable for not only the relief requested in the original complaint, but also for violations of the FDCPA.  The gist of the violations, advertising for a foreclosure without authority, sending notices to the auctioneer and sending letters to Plaintiffs without contractual or legal authority were included in the allegations of the original complaint.

The First Circuit has considered what allegation are needed to allow an amended complaint to relate back for statute of limitation purposes.  In _Turner v. United States_, 699 F. 3d 578 (1st Cir. 2012) the Court held:

Under Fed. R. Civ. P. 15(c)(2), "otherwise untimely pleading amendments . . . 'relate back' to the date of the timely-filed original pleading provided the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Ciampi, 419 F.3d at 23(emphasis omitted) (quoting Fed. R. Civ. P. 15(c)(2)).

Thus there was sufficient factual notice to Chase in the original complaint to allow an amended complaint.

## THE INJUNCTIVE RELIEF CLAIM AND THE CLAIM FOR VIOLATION OF R.I.G.L. 34-27-1 ARE PLAUSIBLE AND VIABLE CLAIMS

The claims filed by Plaintiffs in Count IV and Count VI both state a claim, pursuant to law.  Count IV seeks damages for seeking to foreclose without complying with R.I.G.L 34-27-3.1.  This statute requires that certain notices be sent to the Plaintiff.  The failure of Defendant to send such notices would render the foreclosure void.  Thus lack of compliance with this statute constitutes conduct for which the Defendant can be liable for purposes of the FDCPA claim and the attempt to foreclose without statutory authority. It was not filed in bad faith and warrants damages in that the Plaintiffs had to file this action to counter Defendants' lack of compliance with the statute.

The claim filed by Plaintiffs seeking injunctive relief is an essential aspect of their case.  There is no bad faith as alleged by the Defendants.  This Court has determined that there could not be a uniform injunction pervasive to all the cases.  Thus each Plaintiff had to seek injunctive relief pursuant to FRCP 65, for a

Mandatory Injunction and a Permanent Injunction.  Thus the issues are not moot

and are part of the relief sought by the Plaintiffs.

## PLAINTIFFS HAVE PLEADED FRAUD WITH SPECIFICITY

The Plaintiffs' allegations about the fraudulent assignment from WAMU,

which they allege never owned the mortgage or note, with the name of an LPS

employee affixed to it and that Defendants knew about these facts are specific

enough that they have pleaded the claim with sufficient specificity to withstand a

Motion to Dismiss. As indicated by the First Circuit, in *Rodriguez-Reyes*, they do

not have to prove a prima facie case in their pleadings.  The analysis of the factual

allegations stated in this memorandum, indicate that they are sufficient to proceed

on their case.

## CONCLUSION

Plaintiffs have established in their pleadings to relief as a matter of law, if

they are able to prove the elements of each claim.  They have plead sufficient facts

to  prove breach of contract, FDCPA violations, wrongful foreclosure not in

conformity with the Rhode Island statute, fraud, based on the specific allegations

relating to the fraudulent  assignment and the request for injunctive relief and for a

declaratory judgment.  To the extent that the Court requires additional factual

allegation in their complaint, they request the opportunity to file an amended

complaint. Such amendment would not be futile,  as they can incorporate specific provisions of the corporate governance documents of the trust to buttress further their claims if necessary.  They are also prepared to present multiple documents bearing the name of Christina Allen and the notary public which would indicate that the assignment was void.

For these reasons the Motion to Dismiss should be denied.

Respectfully submitted,

March 3, 2014

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230

<u>CERTIFICATION</u>

I hereby certify that I mailed a copy of the above Memorandum of Law in

Response to Motion to Dismiss to the following electronically or by regular mail,

postage prepaid on this 3rd day of March, 2014:


David S. Pellegrino
40 Westminster Street
Suite 1100
Providence, Rhode Island 02903

/s/ John B. Ennis_____